Slip Op. 12-133

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| SHANTOU RED GARDEN FOODSTUFF CO., LTD., | |
| Plaintiff, | Before: Timothy C. Stanceu, Judge |
| v. | |
| UNITED STATES, | Court No. 05-00080 |
| Defendant. | |

## OPINION

[Affirming, for lack of objection by plaintiff, redetermination issued by U.S. Department of Commerce on remand in action contesting final determinations in antidumping investigation of frozen warmwater shrimp from People's Republic of China]

Dated: October 23, 2012

*John J. Kenkel, J. Kevin Horgan*, and *Gregory S. Menegaz*, DeKieffer & Horgan, PLLC, of Washington, D.C, for plaintiff.

*Patricia M. McCarthy*, Assistant Director and *Stephen C. Tosini*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant.  With them on the brief were *Stuart F. Delery*, Acting Assistant Attorney General and *Jeanne E. Davidson*, Director.  Of counsel on the brief was *Melissa M. Brewer*, Attorney, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of Washington, D.C.

Stanceu, Judge: This case arose from final determinations that the International Trade

Administration of the U.S. Department of Commerce ("Commerce" or the "Department") issued

in an antidumping duty investigation on certain frozen warmwater shrimp (the "subject

merchandise") from the People's Republic of China ("China" or the "PRC").  *See Notice of*

*Final Determination of Sales at Less Than Fair Value: Certain Frozen & Canned Warmwater*

*Shrimp From the People's Republic of China*, 69 Fed. Reg. 70,997 (Dec. 8, 2004) ("*Final*

*Determination*"); *Notice of Amended Final Determination of Sales at Less Than Fair Value &*

*Antidumping Duty Order: Certain Frozen Warmwater Shrimp from the People's Republic of*

*China*, 70 Fed. Reg. 5,149 (Feb. 1, 2005) ("*Amended Final Determination*").  In the

investigation, Commerce assigned to Shantou Red Garden Foodstuff Co., Ltd. ("Red Garden") a

weighted average dumping margin of 27.89%.  *Final Determination*, 69 Fed. Reg. at 71,003.

Red Garden brought this action to contest the final determinations.  Before the court is the

Department's redetermination ("Remand Redetermination"), issued on April 27, 2012, in

response to the court's decision in *Shantou Red Garden Foodstuff Co. v. United States*, 36 CIT

__, __, 815 F. Supp. 2d 1311, 1341-42 (2012) ("*Red Garden*").  *See* Final Results of

Redetermination Pursuant to Shantou Red Garden Foodstuff Co., Ltd. v. United States, [] Court

No. 05-00080, Slip Op. 12-07 (January 13, 2012), ECF No. 56 ("Remand Redetermination").

The Remand Redetermination assigned a 7.20% weighted average dumping margin to Red

Garden.  *Id*. at 16.  Also before the court are plaintiff's comments on the Remand

Redetermination, Pl.'s Comments on Final Results of Redetermination Pursuant to Remand

(May 10, 2012), ECF No. 57 ("Pl.'s Comments"), and defendant's response to those comments,

Def.'s Resp. to Pl.'s Comments upon the Remand Results (Jun. 12, 2012), ECF No. 58.

Background of this litigation is set forth in the court's opinion in *Red Garden*, issued on

January 13, 2012.  *See* 36 CIT at ___, 815 F.Supp.2d. at 1314-15.

  The court has reviewed the Remand Redetermination, plaintiff's comments thereon, and

defendant's response.  The court concludes that the decisions Commerce made in the Remand

Redetermination comply with the court's order, with one exception.  In determining a surrogate

value for raw, head-on, shell-on shrimp obtained by Red Garden's suppliers, Commerce chose

ranged data compiled by Devi Sea Foods, Ltd., an Indian shrimp processor that was a respondent

in a parallel antidumping investigation of frozen shrimp from India, over data compiled by the

Central Bank of Ecuador pertaining to shrimp exports from Ecuador and several other data

sources.  Remand Redetermination 6, 10-11.  The only explanation Commerce gave for its

rejection of the Ecuadorian data in favor of the Devi data was that "[i]t is the Department's

practice to rely upon the primary surrogate country for all SVs [*i.e.*, surrogate values] wherever

possible."  *Id* at 10-11.  Noting that "[t]he record of the investigation contains a suitable source

to value the main input from a producer, Devi, of the identical merchandise in India as described

above," Commerce determined "that it is unnecessary to look outside India, *i.e.*, to Ecuador, for

purposes of valuing the main input, head-on, shell-on shrimp."  *Id.* at 11.  Elsewhere, the

Remand Redetermination states that "[i]n general, the Department prefers to use broad-market

averages as opposed to data derived from a single producer" but qualifies this statement by

adding that "when other competing sources for SV data are unreliable, such as in this case, the

Department may resort to the use of company-specific data."  *Id.* at 8.  Here, there is no finding

that the Ecuadorian data are unreliable.

The antidumping statute does not confine the choice of surrogate values to a single

surrogate country.  Tariff Act of 1930, § 223, 19 U.S.C. § 1677b(c)(1) (2006).[1]  Here, Commerce

gave effect to what it described as a "practice" of using a single surrogate country, even though

Commerce, in past cases, has departed from that course of action when it has concluded that

better data were available from another country that qualified as a surrogate country.  *See, e.g.*,

---

[1] Unless otherwise indicated, further citations to the Tariff Act of 1930 are to the relevant portions of Title 19 of the U.S. Code, 2006 edition.

Issues and Decision Memorandum for Certain Frozen Fish Fillets from the Socialist Republic of

Vietnam, A-552-801, at 11-12 (Mar. 9, 2009), available at

http://ia.ita.doc.gov/frn/summary/vietnam/E9-5744-1.pdf (last visited Oct. 23, 2012) (calculating

surrogate value for broken fish fillets using Indonesian import statistics despite Bangladesh

being the primary surrogate country for the investigation); Issues and Decision Memorandum for

the Final Results and Final Partial Recission of Certain Cut-to-Length Carbon Steel Plate from

Romania, A-485-803, at 24-26 (Mar. 15, 2005), available at

http://ia.ita.doc.gov/frn/summary/romania/E5-1127-1.pdf (last visited Oct. 23, 2012) (calculating

surrogate value for limestone using Philippines import statistics despite choosing Egypt as the

surrogate country for the investigation); Issues and Decision Memorandum for the Less Than

Fair Value Investigation of Silicon Metal from the Russian Federation, A-821-817, at 19-20

(Feb. 3, 2003), available at http://ia.ita.doc.gov/frn/summary/russia/03-3408-1.pdf (last visited

Oct. 23, 2012) (calculating surrogate value for wood charcoal using Thai import statistics despite

choosing Egypt as the surrogate country for the investigation).  Here, Commerce adhered to its

practice without comparing the Ecuadorian countrywide data to the Devi company-specific data

according to the general criteria it stated it was applying in the Remand Redetermination.

Remand Redetermination 7 ("The Department prefers to use SVs that are publicly-available,

broad-market averages, contemporaneous with the POI [*i.e.*, period of investigation], specific to

the input in question, and exclusive of taxes and exports.") (footnote omitted).  The Devi data,

unlike the Ecuadorian data, pertain to a single producer and therefore are not a broad market

average.  Without a specific comparison of the Ecuadorian and the Devi data according to this

criterion and the other criteria Commerce has identified, the court is not able to state that the

**Court No. 05-00080**                                                                                    **Page 5**

choice was based on a fair comparison of the two data sets on the record.  Commerce is required

to value a factor of production according to the "best available information."  19 U.S.C.

§ 1677b(c)(1).

Nevertheless, the court determines that plaintiff has waived any objection to the

Department's decision to choose the Devi data over the Ecuadorian data by declining to object to

this decision and by expressly supporting the Remand Redetermination.  Pl.'s Comments 1

("Red Garden does not oppose the Remand Results" and "requests that the Court issue its

opinion and order based on those Results . . .").  The court, therefore, will enter judgment

affirming the Remand Redetermination.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated: October 23, 2012
       New York, New York

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **SHANTOU RED GARDEN FOODSTUFF CO., LTD.**,<br><br>       Plaintiff,<br><br>   v.<br><br>**UNITED STATES**,<br><br>       Defendant. | **Before: Timothy C. Stanceu, Judge**<br><br><br>**Court No. 05-00080** |

### <u>JUDGMENT</u>

Upon considering the Final Results of Redetermination Pursuant to Shantou Red Garden Foodstuff Co., Ltd. v. United States, Consol. Court No. 05-00080, Slip Op. 12-07 (January 13, 2012), ECF No. 56, filed with the court on April 27, 2012 ("Remand Redetermination"), all comments thereon, and all other filings and proceedings herein, after due deliberation, and in conformity with *Shantou Red Garden Foodstuff Co. v. United States*, 36 CIT __, __, 815 F. Supp. 2d 1311, 1341-42 (2012), and the Opinion issued this date, it is hereby

  **ORDERED** that the Remand Redetermination be, and hereby is, AFFIRMED.


          /s/ Timothy C. Stanceu
          Timothy C. Stanceu
          Judge

Dated: October 23, 2012
New York, New York